IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD GIOMI; SALLY GIOMI; CHANG W. SHON; YEON CHANG SHON; SANG SUK SHON; and CHANG S. SHON,<br><br>        Plaintiffs,<br><br>  vs.<br><br>INMI S. FEGENBUSH, fka INMI S. LA RUE; SLG, LLC, a Hawaii Limited Liability Company; LA RUE BUILDERS, INC.; DOUGLAS O. FEGENBUSH, JR.; BANK OF HAWAII; DOES 1 THROUGH 50,<br><br>        Defendants. | CIV. NO. 11-00292 SOM/KSC<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ACCOUNTING |

**ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ACCOUNTING**

**I.       INTRODUCTION.**

      Plaintiffs Richard and Sally Giomi, and their nephews Chang W. Shon and Chang S. Shon, along with their respective wives, Yeon Chang Shon and Sang Suk Shon, sue Defendant Inmi S. Fegenbush, formerly known as Inmi S. La Rue. Fegenbush was Plaintiffs' real estate broker on numerous property purchases. Fegenbush then acted as a rental property manager for the properties, saying she did it as a "friend."

      By accepting money on behalf of Plaintiffs and with their permission, Fegenbush became Plaintiffs' agent and owed Plaintiffs a fiduciary duty. Plaintiffs now seek an accounting

by Fegenbush of the money she managed on their behalf. Plaintiffs' motion is granted.

**II.    FACTUAL BACKGROUND.**

Fegenbush was deposed on December 14, 2009. See Deposition of Inmi Song Fegenbush, ECF No. 42-2, filed March 16, 2012. Given that testimony, it is undisputed that Fegenbush was the real estate broker for Plaintiffs with respect to Plaintiffs' purchases of many different properties. See Fegenbush Depo. at 50-51 (indicating that Fegenbush was the real estate agent for the Giomis' purchase of property located at 576 Kaimalino Street); 65 (indicating that Fegenbush was a dual agent for Sang Suk Shon's purchase of property located at 1316-A Mokapu Boulevard); 98-99 (indicating that Fegenbush was the buyer's agent for the purchase of 2310 Seaview Avenue by Chang Wu Shon and his wife); 108 (indicating that Fegenbush was a dual agent with respect to the Giomis' purchase of an Iole Street apartment building); 139 (indicating that Fegenbush was the Giomis' agent with respect to their purchase of property at 46-065 Konohiki Street); at 153 (indicating that the Giomis' purchased property at 1020 Koko Uka Place through Fegenbush). Fegenbush also sold property to the Giomis. See Fegenbush Depo. at 84-85 (indicating that she sold 1707-B Palolo Avenue to the Giomis, who subsequently sold it to San Suk Shon).

Fegenbush then assisted Plaintiffs with the renting of the properties. She says, for example, that with respect to the Giomis' 576 Kaimalino Street property, she oversaw the rental, found tenants, collected the rent, and made the mortgage payments. See Fegenbush Depo. at 53-54. Fegenbush says she rented out 1316-A Mokapu Boulevard for Sang Suk Shon. Id. at 70-73. She was also responsible for renting the units at 1707B Palolo Avenue, 2310 Seaview Avenue, Iole Street, and 46-065 Konohiki Street. Id. at 86, 99-100, 109, 139-40. Fegenbush says that 1020 Koko Uku Place was never rented.

She says she collected the rental income for the properties, placing it 75% to 80% of the time into the respective joint accounts she had with the Giomis and the Shons. See Fegenbush Depo. at 117-18; 327 (indicating that she collected monthly rent checks for the Giomis and the Shons); 57 (indicating that, with respect to the rent checks for 576 Kaimalino Street, she deposited the rent checks most of the time into the joint account, but some of the time into her personal account). Other times, she placed rent money she received into her personal account. Id. at 118, 234, 238.

Fegenbush denies having kept any of the rent money for herself. Id. at 128-29. She says she deposited the rent checks into her personal account only to avoid the hold on the rent checks that would have occurred had they been deposited into the

joint accounts. She said that she eventually transferred such money from her individual account to the appropriate joint account she had with either the Giomis or the Shons. Id. at 118.

Fegenbush indicated that the rent checks were sometimes made out to the Giomis and the Shons and other times to Fegenbush. Id. at 328. Fegenbush also collected the security deposits for the properties, putting the security deposits into her individual account. She says that she returned the security deposits, when appropriate, from her individual account. Id. at 452-455.

Fegenbush admits that, on at least one occasion, she used money from the joint account she had with the Giomis for her personal expenses. Id. at 167-68 (indicating that she used a check to pay for a beauty shop visit, probably because she did not have her own checkbook at the time). Fegenbush also concedes that she wrote $1,500 and $600 checks from a joint checking account made out to cash, but could not recollect why she did that. Id. at 184.

Fegenbush did not keep any contemporaneous written record of the rental income she received. Id. at 120. With respect to the 1707B Palolo Avenue property, Fegenbush said that the only record of the rentals she had was in her head. Id. at 86.

Fegenbush says she gratuitously managed the properties as a friend, not a paid property manager. See id. at 126 ("I was friend who was helping. I wasn't being compensated for being a -- managing their properties, helping with their properties. I was doing it free of charge."), ECF No. 42-2. Fegenbush says her management services included arranging for the maintenance and repairs on the properties and keeping track of the rental payments. She says that she had no written contract and was not paid. See Declaration of Inmi S. Fegenbush ¶¶ 10 and 13, ECF No. 45-3, May 8, 2012.

Plaintiff Chang S. Shon's First Amended Responses to Defendants' First Request For Answers to Interrogatories ¶ 15, ECF Nos. 42-9 and 62-2, indicates that Fegenbush had promised that, if Fegenbush acted as the real estate broker on certain purchases Shon was considering, Fegenbush would then manage the rental of the properties for free. However, Shon says that Fegenbush actually charged a 10% management fee, as evidenced by a partial accounting eventually prepared by Fegenbush. Id.; see also ECF No. 42-12 (partial accounting for 1316A Mokaupu Boulevard).

**III.     FEGENBUSH MUST PROVIDE AN ACCOUNTING.**

Plaintiffs argue that Fegenbush owed them a fiduciary duty to maintain complete records and to segregate all funds entrusted to her. Plaintiffs seek an accounting "of any and all

5

monies under her control which belong to the Plaintiffs." See Motion at 17, ECF No. 41, Mar. 16, 2012. Specifically, Plaintiffs seek an accounting concerning the properties located at 576 Kaimalino Street, 1316-A Mokapu Boulevard, 1707B Palolo Avenue, 2310 Seaview Avenue, 46-065 Konohiki Street, and the Iole Street rental property, as well as the $60,000 provided to Fegenbush for the remodeling of the Konohiki Street property. Plaintiffs are not seeking an accounting concerning payment of commissions to Fegenbush on the purchases and sales of the various properties.

Whether Fegenbush must provide an accounting turns on whether Fegenbush is considered Plaintiffs' agent. "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01. "It is well established that '[a]n agency relationship may be created through actual or apparent authority.'" State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315, 325, 978 P.2d 753, 763 (1999) (quoting Cho Mark Oriental Food, Ltd. v. K & K Int'l, 73

Haw. 509, 515-16, 836 P.2d 1057, 1061-62 (1992)). Apparent authority is not at issue in this case.[1]

"Actual authority exists only if there has been a manifestation by the principal to the agent that the agent may act on his account and consent by the agent so to act, and may be created by *express agreement* or *implied from the conduct of the parties or surrounding circumstances*." State Farm, 90 Haw. at 325, 978 P.2d at 763 (quoting Cho Mark, 73 Haw. at 515-16, 836 P.2d at 1061-62).

"Express actual authority requires an oral or written agreement between the parties that the principal has delegated authority that the agent has accepted and that authorizes the agent to do certain acts." Cho Mark, 73 Haw. at 515-16, 836 P.2d at 1061-62. The record in the present case does not allow a determination as to whether Fegenbush had express actual authority to act as Plaintiffs' agent. In paragraph 15 of Plaintiff Chang S. Shon's First Amended Responses to Defendants' First Request For Answers to Interrogatories, ECF No. 42-9 and 62-2, Shon says that Fegenbush told Shon that, if Shon purchased

---

[1] Apparent authority exists when a principal does something or permits an agent to do something that reasonably leads a third party to believe that the agent has authority to act on the principal's behalf. Cho Mark, 73 Haw. at 516, 836 P.2d at 1062. The focus is not on the intention of the alleged principal or the alleged agent, but instead on "whether a third party relies on the principal's conduct based on a reasonable belief in the existence of such a relationship." Id. at 517, 836 P.2d at 1062.

7

certain real properties using Fegenbush as a broker, Fegenbush would manage the rental of the properties for free.  Shon says that Fegenbush actually charged a 10% management fee, shown in the partial accounting prepared by Fegenbush.  Id.; see also ECF No. 42-12 (partial accounting for 1316A Mokaupu Blvd.).  Fegenbush, on the other hand, says she gratuitously managed the properties as a friend, not a property manager.  She says that there was no express contract under which she managed any property.  See Fegenbush Depo. at 126 (Dec. 14, 2009), ECF No. 42-2.

Implied actual authority arises either independent of any express grant of authority or by necessary or reasonable implication to effectuate some other authority expressly conferred by the principal.  See Cho Mark, 73 Haw. at 516, 836 P.2d at 1062.  The "focus is on the agent's understanding of his authority inasmuch as the relevant inquiry is whether the agent reasonably believes, because of the conduct of the principal (including acquiescence) communicated directly or indirectly to him, that the principal desired him so to act."  Id., 836 P.2d at 1062 (quotations omitted).

Even without a specific agreement that Fegenbush would manage the rental of the properties, the undisputed evidence is that she did so.  Fegenbush found tenants, collected rents, maintained and renovated properties, and paid mortgages.  The

8

reasonable implication of this is that Fegenbush was a managing agent for Plaintiffs. That is, Fegenbush understood that she was managing the properties in accordance with Plaintiffs' desires. See Cho Mark, 73 Haw. at 516, 836 P.2d at 1062. She herself states that she was managing their properties, although she says she was acting only as their friend. See Fegenbush Depo. at 126.

That Fegenbush may have been managing the properties as an unpaid "friend" does not make her any less of a fiduciary, as there is no dispute that Fegenbush believed that Plaintiffs wanted her to manage their properties. See id. Acting as Plaintiffs' property manager, she owed Plaintiffs a fiduciary duty with respect to the money she handled on their behalf.

The Ninth Circuit has stated: "If the principal proves or the agent admits that the agent has come into possession of money or other thing for the principal, the agent has the burden of proving that he has paid it to the principal or disposed of it in accordance with his authority." See In re Niles, 106 F.3d 1456, 1462 (9th Cir. 1997). "Basic principles of the law of fiduciaries therefore place the burden to render an accounting on the fiduciary once the principal has shown that funds have been entrusted to the fiduciary and not paid over or otherwise accounted for." Id. "The evidence of what funds were received by the fiduciary and how they were applied is likely to be more accessible to the fiduciary than to the principal."

Fegenbush has not accounted for the rental income and remodeling money she indisputably received. She must provide an accounting. See Prine v. Hatfield, 145 N.W.2d 809, 811 (Mich. App. 1966) ("By appellant's own admissions, he was collecting rents and generally looking after appellee's property. Once he undertook to perform these services, his relationship to appellee was one of a fiduciary."); Jones v. David, 1992 WL 884472 (Va. Cir. Ct., Jan. 31, 1992) ("Jones, though acting without compensation, was agent for David in the operation of the property, the collection of rents and the making of disbursements and as an agent was in a fiduciary relationship with her principal. Jones bears the burden of proving the legitimacy of all disbursements made from the account as David's agent."); Restatement (Third) of Agency § 8.22 ("An agent has a duty, subject to any agreement with the principal, (1) not to deal with the principal's property so that it appears to be the agent's property; (2) not to mingle the principal's property with anyone else's; and (3) to keep and render accounts to the principal of money or other property received or paid out on the principal's account.").

Fegenbush argues that, because she acted gratuitously, no agency relationship arises. This court disagrees. Comment d to § 1.01 of the Restatement (Third) of Agency specifically notes, "Many agents act or promise to act gratuitously." Such

10

promises to act gratuitously do not create enforceable contracts as to the promises, as no consideration is given. See Restatement (Third) of Agency § 71. But an agency relationship may nevertheless ensue. See Restatement (Third) of Agency § 1.04(3) ("A gratuitous agent acts without a right to compensation."); Restatement (Third) of Agency § 8.01, cmt. c (noting, "All who assent to act on behalf of another person and subject to that person's control are common-law agents," and a principle "applicable to gratuitous agents"). Comment e to § 8.08 of the Restatement (Third) of Agency specifically notes, "A person who gratuitously assents to acting as an agent acts as a fiduciary within the scope of the agency relationship."

Fegenbush's citation to Cho Mark for the proposition that, having acted as Plaintiffs' friend, she had no fiduciary duties is unpersuasive. Cho Mark involved a real estate broker who helped a client purchase property that the client planned to partition and lease commercially. 73 Haw. at 512, 836 P.2d at 1060. The real estate broker had a friend who asked for help finding space for a proposed food market. Id., 836 P.2d at 1060. The broker showed the friend and the friend's associate the commercial space and presented them with a lease the landowner had not signed. Id., 836 P.2d at 1060. Eventually, the landowner and the friend signed the lease, but neither secured a permit required to provide electricity for the proposed food

11

mart.  The food mart never opened.  Id., 836 P.2d at 1060.  The
friend's company then sued the broker, the landowners, and
related entities.  Among the claims against the broker was the
claim that he had acted as a dual agent for the landowner and the
friend.  Id.  The trial court determined that the broker had not
acted as an agent of either.  73 Haw. at 515, 836 P.2d at 1061.
On appeal, the Hawaii Supreme Court affirmed, finding that no
agency relationship was created when the broker helped a friend
find retail space for a food mart without acting in accordance
with the property owner's desires.  73 Haw. at 516, 836 P.2d at
1062.  Cho Mark is distinguishable because there is ample
evidence in the present record that Fegenbush was collecting rent
and managing the properties in accordance with Plaintiffs'
desires.

Fegenbush argues that she should not have to provide an
accounting because there is no evidence that Plaintiffs have been
damaged.  But Fegenbush admits that she deposited rental income
into her personal account while providing no record of whether
she transferred the rental income (minus expenses) to the
appropriate joint account.  Fegenbush admits that, on at least
one occasion, she used a check from the Giomis' account to pay
for beauty shop services.  She also concedes that she does not
remember why she wrote $1,500 and $600 checks made out to cash.
These circumstances, combined with Fegenbush's status as a

12

fiduciary, give rise to a duty on Fegenbush's part to provide an accounting to Plaintiffs for all money received on their behalf, as well as the $60,000 received to remodel the Konohiki Street property.  See In re Niles, 106 F.3d at 1462.

**IV.    CONCLUSION.**

The court grants Plaintiffs' motion for partial summary judgment concerning an accounting, ECF No. 41.  As Fegenbush managed money on Plaintiffs's behalf, Plaintiffs are entitled to know how she managed that money.  Fegenbush must therefore provide Plaintiffs with an accounting concerning the rental properties located at 576 Kaimalino Street, 1316-A Mokapu Boulevard, 1707B Palolo Avenue, 2310 Seaview Avenue, 46-065 Konohiki Street, and Iole Street, as well as the $60,000 Fegenbush received for the remodeling of the Konohiki Street property.  This accounting must include a detailed description of money received (including, but not limited to, rent and security deposits) on behalf of Plaintiffs with respect to each property, money expended on behalf of Plaintiffs (including, but not limited to, mortgages, maintenance, and renovations paid for with

respect to the various properties), and money paid over to Plaintiffs.  The accounting shall be provided to Plaintiffs no later than July 23, 2012.

        IT IS SO ORDERED.

        DATED: Honolulu, June 5, 2012.



      /s/ Susan Oki Mollway

      Susan Oki Mollway
      Chief United States District
      Judge

Giomi, et al. v. Fegenbush, et al., Civ. No. 11-00292 SOM/KSC; ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ACCOUNTING